## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JESSICA KLOSS, on behalf of the TPI Hospitality Employee Stock Ownership Plan and a class of similarly situated participants of the Plan, <br><br>               Plaintiff, <br><br> v. <br><br> ARGENT TRUST CO., Torgerson Properties, Inc. (d/b/a TPI Hospitality), TPI Hospitality ESOP Committee, and Thomas R. Torgerson. <br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. _____ <br><br>    CLASS ACTION COMPLAINT |

## <u>NATURE OF THE ACTION</u>

1.       Plaintiff Jessica Kloss ("Plaintiff"), as a representative of the Class described herein, and on behalf of the TPI Hospitality Employee Stock Ownership Plan (the "Plan" or the "ESOP"), brings this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), against Defendants Argent Trust Co. ("Argent"), Torgerson Properties, Inc. (d/b/a TPI Hospitality) ("TPI"), TPI Hospitality ESOP Committee (the "ESOP Committee"), and Thomas R. Torgerson ("Thomas Torgerson") (collectively "Defendants").

2.       As described herein, Defendants breached their fiduciary duties with respect to the Plan in violation of ERISA, to the detriment of the Plan and its participants.

**INTRODUCTION**

3.      TPI operates dozens of hotels and restaurants in Minnesota and Florida. Since 1991, Thomas Torgerson has served as Chief Executive Officer and Chair of the Board of Directors of TPI.

4.      In 2015, TPI became 100% employee-owned when it formed the TPI Hospitality Employee Stock Ownership Plan ("ESOP" or the "Plan") and appointed Argent as the Trustee of the ESOP. Argent, in its capacity as trustee of the ESOP, authorized the acquisition of 100% of TPI's stock (200,000 shares) for $10,000,000.00 ($50.00 per share). Heralded by media sources as one of the largest ESOPs in the hospitality industry across the country, the Plan provided a valuable retirement benefit and compensation to TPI's employees. According to one news source, Thomas Torgerson stated that the ESOP would reward the many employees who had worked for TPI for more than 20 years.[1]

5.      Around the same time as the ESOP's formation, TPI's business ventures expanded into Florida. TPI formed several business entities to purchase and operate beach-front property in Fort Myers Beach that were eventually named as a variation of TPI-FMB, LLC. News sources from this time period indicated that Thomas Torgerson intended for TPI to continue current operations on these properties, which included retail and restaurant spaces as well as rental and hotel units, with the possibility for improvements in the future.[2]

---

[1] *Willmar's TPI Hospitality Becomes Employee-Owned*, TWIN CITIES BUSINESS (Jan. 15, 2015), https://tcbmag.com/willmara%C2%80%C2%99s-tpi-hospitality-becomes-employee-owned/.

[2] *Hospitality Company Executive Buys Two Sections of Island*, BUSINESS OBSERVER (May 1, 2015), https://www.businessobserverfl.com/news/2015/may/01/hospitality-company-executive-buys-two-sections-island/.

A few years later in 2018, TPI announced plans to develop a Margaritaville Resort on these properties.[3] The Margaritaville Resort in Fort Meyers Beach was TPI's biggest project ever and was expected to generate substantial profits for TPI.

6.      Rather than allow TPI's employees to receive the benefit of the expected profits from the Margaritaville Resort development, TPI terminated the ESOP, and Argent sold the ESOP's TPI stock to a John Dammermann ("Dammermann") for less than fair market value in 2020. Specifically, Dammermann purchased the ESOP's shares for $500,000.00 ($2.50 per share), a small fraction of the ESOP's 2015 purchase price. Dammermann is Thomas Torgerson's long-time friend and co-investor in the Margaritaville Resort and other hotel properties. The 2020 transaction allowed Thomas Torgerson and Dammermann to reap the expected windfall from the Margaritaville Resort and excluded the Plan and its participants from sharing in the anticipated profits from the Margaritaville Resort. A similar Margaritaville Resort in Florida was sold for $270 million in 2021, illustrating the potential value of TPI's Margaritaville Resort project.

7.      Plaintiff is a former TPI Hospitality employee who had an individual account in the ESOP. Plaintiff and other participants would have received additional benefits from their accounts had the ESOP received fair market value for its shares. Plaintiff brings this action pursuant to 29 U.S.C. §§ 1104 & 1132(a)(2)–(3) to remedy Defendants' unlawful conduct, recover losses to the Plan, and obtain other appropriate relief as provided by ERISA.

---

[3] *Margaritaville Resort Coming to Fort Myers Beach*, MARGARITAVILLE BLOG (June 11, 2018), https://blog.margaritaville.com/2018/06/margaritaville-resort-fort-myers-beach/.

## JURISDICTION AND VENUE

8.     Plaintiff brings this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable or remedial relief as set forth in 29 U.S.C. § 1109.

9.     This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

10.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) because the ESOP was administered in this district.

## RELEVANT PARTIES

### THE ESOP

11.     The Plan was established by TPI with an effective date of January 1, 2015.

12.     The Plan was an "employee pension benefits plan" within the meaning of 29 U.S.C. § 1002(2)(A) and an "employee stock ownership plan" within the meaning of 29 U.S.C. § 1007(d)(6).

13.     The Plan was designed to invest primarily in "qualifying employer securities," as defined in 29 U.S.C. § 1107(d)(7).

14.     Section 9.1 of the ESOP's Plan Document provides that the Plan will have one or more individual trustees, a corporate trustee, or any combination thereof. Section 9.1(a) of the Plan Document provides that each trustee will be appointed and will serve until a successor has been named or until such trustee's resignation death, incapacity, or removal, at which event the sponsoring employer will name a successor trustee.

4

15.     According to the Trust Agreement for the TPI Hospitality Employee Stock Ownership Trust, TPI established the ESOP's trust with Argent as the trustee on or about January 1, 2015.

16.     According to the Trust Agreement and the Summary Plan Document, the ESOP's administrator and TPI's Board had the authority to direct certain of Argent's acts for the proper distribution, investment, and management of the trust fund. Section 8.2 of the Plan Document provides that the administrator's discretionary powers and duties included directing the trustee with respect to payments from the trust fund.

17.     The Plan's participants were TPI employees. The ESOP had 857 participants as of December 2020.

18.     In 2015, Argent, acting in its capacity as ESOP trustee, caused the Plan to acquire 200,000 shares of TPI stock, representing 100% of the issued shares, for $10,000,000.00 ($50.00 per share). The ESOP's acquisition of TPI stock was 100% leveraged. The Plan paid the purchase price through a 25-year promissory note in favor of the company at 2.68% interest. In 2017, the company modified the loan agreement to extend the repayment schedule from 25 years to 50 years and to reduce the interest rate from 2.68% to 2.50%.

19.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The 2015 ESOP transaction was an integrated two-stage transaction. First, TPI redeemed most of the shares owned by Thomas Torgerson or a trust controlled by Thomas

Torgerson in a leveraged transaction. Second, the ESOP purchased Thomas Torgerson's remaining shares in the transaction described in the preceding paragraph.

20.     Shares of TPI stock were released to individual participant accounts from a suspense account in proportion to the amount of the note payment each year. Unallocated shares of common stock served as collateral for the ESOP's note obligations.

21.     Effective December 29, 2020, the TPI Board of Directors terminated the Plan.

22.     On or about December 29, 2020, Argent entered into an agreement to sell the ESOP's TPI stock to Dammermann for $500,000.00 ($2.50 per share).

23.     The ESOP completed final distributions to plan participants by December 2021.

## PLAINTIFF

24.     Plaintiff Jessica Kloss resides in Forest Lake, Minnesota. Plaintiff worked for TPI from approximately 2009 until 2020. Plaintiff was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff would have received a larger distribution from her ESOP account had Defendants complied with their legal duties as fiduciaries of the ESOP, as described herein.

## DEFENDANTS

### TORGERSON PROPERTIES, INC. d/b/a TPI HOSPITALITY, INC.

25.     TPI is based in Wilmar, Minnesota.

26.     Thomas Torgerson's grandfather initially founded TPI as a clothing business in the early 20th century. In 1972, Thomas Torgerson's father expanded the business to

hospitality, and TPI acquired its first hotel. According to its website, TPI is Minnesota's largest hospitality company. TPI develops and operates hotels, restaurants, and conference centers in Minnesota and Florida. The company's portfolio of hospitality brands includes Marriott, Hilton, IHG, and Margaritaville Resorts.

27.     TPI was the "employer" within the meaning of 29 U.S.C. § 1002(5), and the "plan sponsor" of the Plan within the meaning of 29 U.S.C. § 1002(16)(B). According to the Plan Document, the employer is a named fiduciary to the ESOP. In its capacity as the employer, TPI was also a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(C).

28.     The Plan's governing instruments and filings include conflicting information about the identity of the Plan "administrator" under 29 U.S.C. § 1002(16)(A). According to the Plan Document, TPI is the administrator as the sponsoring employer of the Plan unless a committee or another administrator is appointed. The Summary Plan Description also identifies TPI as the administrator of the Plan but states that TPI may designate an ESOP Committee as the administrator in the future. Neither document states whether, or when, such a committee was either appointed or delegated responsibility as administrator. However, Form 5500 filings with the U.S. Department of Labor from 2016 through the ESOP's termination identify the ESOP Committee as the administrator of the Plan. In light of the foregoing, Plaintiff alleges that TPI served as the Plan's administrator and in the alternative, as alleged below, that the ESOP Committee served as the Plan's administrator. Plaintiff further alleges that, if TPI delegated its duties and responsibilities as the administrator to the ESOP Committee, TPI retained the duty to monitor the ESOP

Committee's performance of its duties and responsibilities as administrator. As such, TPI was also a fiduciary of the ESOP within the meaning of 29 U.S.C. § 1002(21)(A) by virtue of its position and because it exercised discretionary authority or discretionary control respecting the management of the ESOP, exercised authority and control respecting management or disposition of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

### THE ESOP COMMITTEE

29.     In the alternative, if TPI appointed the ESOP Committee as administrator of the Plan or delegated such responsibilities to the ESOP Committee, the ESOP Committee was the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). According to the Plan Document, the administrator was a named fiduciary of the ESOP. The ESOP Committee was also a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority or discretionary control respecting the management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. As an administrator of the ESOP, the ESOP Committee was also a party in interest to the ESOP as defined by 29 U.S.C. § 1002(14)(A).

30.     Plaintiff does not currently know the identity of the ESOP Committee member(s). When the identity of those members are ascertained, Plaintiff will seek leave to join them as Defendants.

### Thomas R. Torgerson

31.     Thomas Torgerson is a natural person. On information and belief, Thomas Torgerson resides in Fort Myers Beach, Florida.

32.     Since approximately 1991, Thomas Torgerson has served as the Chair of the Board of Directors and a Chief Executive Officer of TPI.

33.     As an officer and director of TPI, Thomas Torgerson was a fiduciary to the ESOP within the meaning of 29 U.S.C. § 1002(21) and a "party in interest" to the ESOP within the meaning of 29 U.S.C. § 1002(14).

### Argent

34.     Argent is a Tennessee trust corporation headquartered in Ruston, Louisiana. Argent provides professional services to employee benefit plans, including ESOPs.

35.     As the trustee of the ESOP, Argent was responsible for holding, managing, and controlling the ESOP's TPI stock. The Trust Agreement required Argent to act prudently and in the interests of ESOP participants.

36.     As trustee, Argent acted as a fiduciary of the ESOP within the meaning of 29 U.S.C. § 1002(21)(A)(i) because Argent exercised "any authority or control respecting . . . disposition of [the Plan's] assets." Argent was also a named fiduciary of the Plan within the meaning of 29 U.S.C. § 1102(a) and pursuant to the terms of the written instruments under which the Plan was established and maintained.

## DEFENDANTS' ERISA VIOLATIONS

### THE STATUTE

37.    ERISA imposes strict fiduciary duties of loyalty and prudence upon

fiduciaries of retirement plans. 29 U.S.C. § 1104(a)(1) states, in part:

> [A] fiduciary shall discharge [its] duties with respect to a plan solely in the interest
> of the participants and beneficiaries and—
>
> (A)    for the exclusive purpose of
>
> > (i)      providing benefits to participants and their beneficiaries; and
> >
> > (ii)     defraying reasonable expenses of administering the plan;
>
> (B)    with the care, skill, prudence, and diligence under the circumstances
> then prevailing that a prudent man acting in a like capacity and
> familiar with such matters would use in the conduct of an enterprise
> of like character and with like aims . . . .
>
> (D)    in accordance with the documents and instruments governing the plan
> insofar as such documents and instruments are consistent with the
> provisions of [ERISA].

38.    These ERISA fiduciary duties are "the highest known to the law." *Donovan*

*v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). "A fiduciary's process must bear the

marks of loyalty, skill, and diligence expected of an expert in the field. It is not enough to

avoid misconduct, kickback schemes, and bad-faith dealings. The law expects more than

good intentions. A pure heart and an empty head are not enough." *Sweda v. Univ. of Pa.*,

923 F.3d 320, 339 (3d Cir. 2019) (quotation omitted), *cert. denied*, 140 S. Ct. 2565 (2020).

39.    A fiduciary is liable for failing to act prudently and loyally with respect to

any matter involving the fiduciary's duties to the plan. 29 U.S.C. § 1104(a)(1); *see also*

*Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 773 (4th Cir. 2019), *as amended* (Mar. 22,

2019) ("[A]n ESOP fiduciary is liable to the plan participants if it breached its fiduciary duties, *i.e.*, failed to act '*solely* in the interest of the participants,' with the care, skill, prudence, and diligence used by a 'prudent man acting in a like capacity.'").

40.     A trustee is liable if its "decision-making process [is] inadequate." *Id.* at 774. In other to satisfy its duty, a trustee must consider the motivations of the parties and "investigat[e] whether [such motivations] affected the ESOP's legality under ERISA." *Id.* at 778. A trustee must be "critical" of information supplied by company management if management has "financial incentives" in the deal. *Id.* at 775.

41.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to seek appropriate equitable relief for any violation of ERISA or the terms of the plan. Plaintiff seeks recovery on behalf of the Plan and other appropriate relief pursuant to these statutory provisions.

**TPI'S EXPANSION INTO FLORIDA**

42.     Around the time of the ESOP's formation, Thomas Torgerson was working to expand TPI's hospitality footprint to Florida.

43.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. TPI first formed several LLCs under variations of the name Grand Resort-Ft.

Myers Beach throughout 2015.[4] Then, from mid-2015 to mid-2016, TPI renamed some Grand Resort-Ft. Myers Beach entities to variations of TPI-FMB, LLC and voluntarily dissolved the remaining Grand Resort-Ft. Myers Beach, LLC entities.[5]

44.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. From early 2015 through mid-2016, TPI used the Grand Resort-Ft. Myers Beach, LLC entities to purchase beach-front and commercial properties in Ft. Meyers Beach. Collectively, various Grand Resort-Ft. Myers Beach, LLC entities entered into at least seven (7) purchase agreements for property that totaled approximately $37,650,000.00.[6] During the same time period, pertinent Grand Resort-Ft. Myers Beach,

---

[4] TPI's Grand Resort-Ft. Myers Beach business entities included Grand Resort-Ft. Myers Beach, LLC (formed in February 2015); PV-FMB, LLC (formed in May 2015 and renamed to Grand Resort II-Ft. Myers Beach, LLC in July 2015); Grand Resort III-Ft. Myers Beach, LLC (formed in July 2015); Grand Resort IV-Ft. Myers Beach, LLC (formed in July 2015); Grand Resort-V, Ft. Myers Beach, LLC (formed in July 2015); Grand Resort VI-Ft. Myers Beach, LLC (formed in November 2015); and Grand Resort VII-Ft. Myers Beach, LLC (formed in December 2015).

[5] Specifically, the name changes were as follows: Grand Resort-Ft. Myers Beach, LLC changed to TPI-FMB I, LLC in September 2016; Grand Resort II-Ft. Myers Beach, LLC changed to TPI-FMB II, LLC in September 2016; and Grand Resort VII-Ft. Myers Beach, LLC changed to TPI-FMB III, LLC in September 2016. Torgerson filed voluntary articles of dissolution as follows: Grand Resort III-Ft. Myers Beach, LLC in April 2018; Grand Resort IV-Ft. Myers Beach, LLC in May 2018; and Grand Resort VI-Ft. Myers Beach, LLC in May 2018.

[6] The property purchases are as follows: (1) On or about March 2015, Grand Resort-Ft. Myers Beach, LLC purchases property from Summer Daze, LP for $6,100,000.00; (2) on or about April 2015, Grand Resort-Ft. Myers Beach, LLC purchases property from Huntingburg Partners, Ltd. for $7,200,000.00; (3) on or about May 2015, Grand Resort-Ft. Myers Beach, LLC purchases property from Scott and Kathryn van Selow for $4,500,000.00; (4) on or about August 2015, Grand Resort-Ft. Myers Beach, LLC purchases property from Estero Beach Holdings, LLC for $3,200,000.00; (5) on or about

LLC entities entered into mortgage agreements associated with the property sales.[7] Later on or about January 2017, TPI-FMB III, LLC (formerly known as Grand Resort VII-Ft. Myers Beach, LLC) sold its property to TPI-FMB I, LLC (formerly known as Grand Resort-Ft. Myers Beach, LLC), and at the same time, TPI-FMB I, LLC entered into a mortgage agreement with Sanibel Captiva Community Bank ("Sanibel") for $6,800,000.00.

45.     As TPI began to amass property, notices of demolition and construction were filed with Lee County, Florida. Records from late 2017 state that TPI's development plans were part of an effort to "restore and reinvigorate" the downtown beach area.

46.     During the summer of 2018, TPI and Margaritaville Holdings announced that they had entered into a partnership to develop a new Margaritaville Resort in the Times Square district of Fort Myers Beach.[8] At the same time, the Mayor of Fort Myers signed

---

August 2015, Grand Resort II-Ft. Myers Beach, LLC purchases property from Shree Somnath LLC for $10,900,000.00; (6) on or about January 2016, Grand Resort VI-Ft. Myers Beach, LLC purchases property from Persaud Properties FL Investments LLC for $3,750,000.00; and (7) on or about May 2016, Grand Resort VII-Ft. Myers Beach, LLC purchases property from John W. Richard for $2,000,000.00.

[7] On or about July 2015, Grand Resort-Ft. Myers Beach, LLC enters into a mortgage agreement with BMO Harris Bank N.A. in the amount of $32,500,000.00. On or about August 2015, Grand Resort V-Ft. Myers Beach enters into a mortgage agreement with Estero Beach Holdings, LLC for $3,200,000.00. On or about August 2015, Grand Resort II-Ft. Myers Beach, LLC enters into a mortgage agreement with Citizens Alliance Bank for $7,500,000.00. Finally, on or about January 2016, Grand Resort VI-Ft. Myers Beach, LLC enters into a mortgage agreement with Persaud Properties FL Investments LLC for $3,125,000.00.

[8] *Margaritaville Resort Coming to Fort Myers Beach*, MARGARITAVILLE BLOG (June 11, 2018), https://blog.margaritaville.com/2018/06/margaritaville-resort-fort-myers-beach/.

an ordinance in July 2018 that approved rezoning specifications for the Margaritaville Resort. Initially, the two entities had projected an opening date in first quarter of 2021.[9]

47.     Some local Fort Meyers Beach residents challenged the Margaritaville Resort development and filed lawsuits against the Town of Fort Myers Beach and/or against pertinent TPI entities.[10] However, each of the lawsuits was resolved by the fall of 2019.

48.     With the exception of TPI-FMB I, LLC's mortgage agreement with Sanibel and Grand Resort II-Ft. Myers Beach, LLC's mortgage agreement with Citizens, each of the Grand Resort entities paid in full their obligations under their various mortgage agreements by early 2017. The remaining Sanibel and Citizens mortgages were paid off by the end of summer 2021.

### SALE OF THE ESOP'S STOCK

49.     On December 29, 2020, Argent, in its capacity as trustee, sold the ESOP's shares to Dammermann for $500,000. On that same date, TPI terminated the ESOP.

50.     The December 2020 sale was for less than fair market value. TPI owned substantial and valuable land both in Minnesota and in Florida at the time of the ESOP's termination. Throughout the Twin Cities area and Southern Minnesota, TPI owned and operated a few dozen hotel properties under major hotel brand names. In addition, TPI

---

[9] With lawsuits filed in connection with the development and with the damage incurred by Hurricane Ian in the fall of 2022, the opening date has been pushed to 2023.

[10] *See Cassity v. Torgerson Props., Inc.*, No. 17-CA-002562 (Fla. Lee County Ct. Aug. 1, 2017); *Patton v. Town of Fort Myers Beach Fla., et al.*, No. 18-CA-003805 (Fla. Lee County Ct. Aug. 8, 2018).

owned and operated several restaurants. In Florida, TPI was developing its biggest project ever, the Margaritaville Resort - Fort Meyers Beach. By December 2020, TPI was close to starting construction on the Margaritaville Resort project.

51.     In September 2021, a similar Margaritaville Resort in Hollywood Beach, Florida, was sold to Pebblebrook Hotel Trust, a publicly traded REIT, for $270 million.[11] The Margaritaville Resort – Hollywood Beach transaction shows that the sale of the ESOP's TPI stock for $500,000 was far less than fair market value.

52.     In addition, TPI's own website repeatedly touts that it has grown from 18 hotels and $43 million in annual revenue in approximately 1999 to 34 hotels and $130 million in annual revenue on or about early 2021.[12] Given the growth in TPI's revenues, TPI's equity value was much higher than the $500,000 transaction price in the December 2020 sale to Dammermann.

53.     While health and safety measures greatly impacted the hospitality industry in 2020, TPI's business still retained its valuable assets, including the Margaritaville Resort project, and received government financial assistance. For example, in April 2020, TPI received a Paycheck Protection Loan in the amount of $629,000. In addition, during that

---

[11]*Pebblebrook Hotel Trust Acquires Margaritaville Hollywood Beach Resort in Hollywood, FL*, PEBBLEBROOK HOTEL TRUST (Sept. 23, 2021), https://investor.pebblebrookhotels.com/news-and-events/news-releases/news-details/2021/Pebblebrook-Hotel-Trust-Acquires-Margaritaville-Hollywood-Beach-Resort-in-Hollywood-FL/default.aspx.

[12] *Leadership Team*, TPI HOSPITALITY, https://www.tpihospitality.com/leadership-team/ (last visited February 1, 2023); *Leadership Team*, TPI HOSPITALITY (Apr. 16, 2021), https://www.tpihospitality.com/leadership-team/ [https://web.archive.org/web/20210126233703/https://www.tpihospitality.com/leadership-team/].

same month, TPI-FMB II, LLC received a Paycheck Protection Loan in the amount of $100,000.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff seeks certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

55.     Plaintiff asserts her claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the TPI Hospitality Employee Stock Ownership Plan at any time since its inception who vested under the terms of the Plan, excluding Plan fiduciaries and individual Defendants and their immediate family.

56.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The Plan had 857 participants as of December 31, 2020.

57.     Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff was a Plan participant and suffered injuries as a result of Defendants' ERISA violations. Defendants treated Plaintiff consistently with other Class members with regard to the Plan. Defendants' improper actions affected all Plan participants similarly.

58.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that she seeks to represent, and she has retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiff does not have any conflicts of interest with any Class members that would impair or impede her ability to represent such Class members.

59.    <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

1.   Whether Argent was a fiduciary with respect to the Plan;

2.   Whether Defendants TPI, the ESOP Committee, and Thomas Torgerson were fiduciaries with respect to the Plan;

3.   Whether the ESOP's fiduciaries failed to comply with the fiduciary standards of prudence and loyalty;

4.   Whether Defendants TPI, the ESOP Committee, and Thomas Torgerson breached their fiduciary duties by failing to adequately monitor Argent;

5.   Whether Argent sold the ESOP's shares for less than fair market value;

6.   The proper form of equitable and injunctive relief; and

7.   The proper measure of monetary relief.

60.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

61.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds and

allocation of the proceeds to participants, would be dispositive of the interests of all participants.

62.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

63.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present

any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

### COUNT I
**Breach of the Fiduciary Duties of Prudence and Loyalty**
**29 U.S.C. § 1104(a)(1)**
**Against Defendant Argent**

64.     Plaintiff incorporates by reference the foregoing paragraphs as though fully stated herein.

65.     Defendant Argent sold the ESOP's stock to Dammermann in December 2020 for less than fair market value. Defendant Argent failed to conduct a prudent investigation of the value of the ESOP's shares in order to obtain a fair and reasonable sale price on behalf of ESOP participants. Defendant Argent failed to act solely in the interest of ESOP participants in the process of negotiating and approving the consideration paid for the ESOP's shares. Defendant Argent therefore failed to comply with the fiduciary duties of prudence and loyalty pursuant to 29 U.S.C. § 1104(a)(1).

66.     ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

67.     ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

68.     Defendant Argent caused losses to the Plan resulting from the above-mentioned breaches of the duties of prudence and loyalty and is liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**COUNT II**
**Co-Fiduciary Liability**
**29 U.S.C. § 1105(a)**
**Against Defendants TPI, the ESOP Committee, Thomas Torgerson, and Argent**

69.     Plaintiff incorporates by reference the foregoing paragraphs as though fully stated herein.

70.     Defendants TPI, the ESOP Committee, and Thomas Torgerson knew that Argent failed to conduct a prudent, independent investigation of the value of the ESOP's shares. Yet, TPI, the ESOP Committee, and Thomas Torgerson permitted Argent to sell the ESOP's stock to Dammermann for less than fair market value, notwithstanding the ESOP trustee's failure to discharge its fiduciary duty. The ESOP Committee and Thomas Torgerson are therefore liable pursuant to 29 U.S.C. § 1105(a) for knowingly participating in Argent's breach, for enabling Argent's breach through their disloyalty, and for failing to remedy Argent's breach.

71.     Defendants TPI, the ESOP Committee, and Thomas Torgerson knew that Argent failed to conduct a prudent investigation of the value of the ESOP's TPI shares for the 2020 transaction. TPI and Thomas Torgerson, by virtue of his management and Board positions, had knowledge of TPI's equity value, including the value of the Margaritaville Resort development. Thus, TPI and Thomas Torgerson knew that Argent approved the sale of the ESOP's stock for less than fair market value. In addition, TPI and/or the ESOP

20

Committee, by virtue of their monitoring and administrator roles, respectively, would have been involved in the valuation process employed by Argent and its financial advisor.

72.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Argent knew that Thomas Torgerson would receive a substantial benefit from the sale of the ESOP's TPI shares for less than fair market value, because Thomas Torgerson would receive the value of the Margaritaville Resort development with his co-investor Dammermann.

73.     ERISA § 409(a), 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

74.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

75.     Defendants TPI, the ESOP Committee, Thomas Torgerson, and Argent are jointly liable for their failures as co-fiduciaries for losses to the Plan resulting from the above-mentioned violations of ERISA and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

## COUNT III
### Failure to Monitor Fiduciaries
### Against Defendants TPI, the ESOP Committee, and Thomas Torgerson
### 29 U.S.C. §§ 1104(a) and 1105(a)

76.     Plaintiff incorporates by reference the foregoing paragraphs as though fully stated herein.

77.     Defendant TPI was a fiduciary of the Plan under 29 U.S.C. § 1002(21). Because it had overall oversight responsibility for the Plan and the specific responsibility to appoint the ESOP Committee and the Plan's trustee, TPI had a fiduciary responsibility to monitor the performance of the ESOP Committee and its members and Argent and to ensure that they were complying with the terms of the Plan and ERISA's statutory requirements. *See* 29 C.F.R. § 2509.75-8 (FR-17). In the alternative, because it had overall responsibility for the Plan and the specific responsibility to appoint the Plan's trustee, the ESOP Committee had a fiduciary responsibility to monitor the performance of Argent and to ensure that it was complying with the terms of the Plan and ERISA's statutory requirements. *See* 29 C.F.R. § 2509.75-8 (FR-17). In the alternative, because he had overall responsibility for the Plan and the specific responsibility to appoint the ESOP Committee and the Plan's trustee, Thomas Torgerson had a fiduciary responsibility to monitor the performance of the ESOP Committee and its members and Argent and to ensure that they were complying with the terms of the Plan and ERISA's statutory requirements. *See* 29 C.F.R. § 2509.75-8 (FR-17).

78.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations and must take prompt and effective action to protect

the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

79.     TPI, the ESOP Committee, and/or Thomas Torgerson breached their fiduciary monitoring duties by, among other things:

     a.    Failing to monitor and evaluate the performance of Argent or have a system in place for doing so, standing idly by as the ESOP suffered significant losses as a result of Argent's imprudent actions and omissions with respect the 2020 transaction;

     b.    Failing to monitor Argent's fiduciary processes, which would have alerted a prudent fiduciary to the breach of fiduciary duties described herein; and

     c.    Failing to remove Argent as trustee.

80.     TPI and/or Thomas Torgerson breached their fiduciary monitoring duties by, among other things:

     a.    Failing to monitor and evaluate the performance of the ESOP Committee or have a system in place for doing so, standing idly by as the ESOP suffered significant losses as a result of the ESOP Committee's imprudent actions and omissions with respect the 2020 transaction;

     b.    Failing to monitor the ESOP Committee's fiduciary processes, which would have alerted a prudent fiduciary to the breach of fiduciary duties described herein; and

23

c. Failing to remove ESOP Committee members whose performance was inadequate in that they approved the sale of the ESOP's stock for less than fair market value, all to the detriment of the Plan and Plan participants' accounts.

81. Because of TPI's, the ESOP Committee's, and/or Thomas Torgerson's breach of the duty to monitor, the ESOP suffered loss due to the sale of its stock for less than fair market value in the 2020 transaction.

82. Under 29 U.S.C. §§ 1104(a), 1109(a), 1105(a), 1132(a)(2), and 1132(a)(3), TPI, the ESOP Committee, and/or Thomas Torgerson are liable to restore to the Plan all losses suffered as a result of their failure to properly monitor Argent and/or the ESOP Committee, and to restore to the Plan any profits which resulted from their failure to properly monitor Argent and/or the ESOP Committee. In addition, TPI, the ESOP Committee, and/or Thomas Torgerson are liable for equitable relief and other relief as provided by ERISA and applicable law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative, and her counsel as class counsel;

B. Declare that Defendants failed to satisfy their fiduciary duties pursuant to 29 U.S.C. § 1104(a)(1) and that Defendants violated their duties as co-fiduciaries pursuant to 29 U.S.C. § 1105(a);

C.  Order Defendants to make good to the Plan and/or any successor trust any losses resulting from violations of ERISA and restore any profits Defendants have made through use of the assets of the Plan;

D.  Impose a constructive trust on, and an accounting of, all proceeds of the fiduciary breaches that are under the control of Defendants or otherwise;

E.  Order that Defendants provide other appropriate equitable relief to the Plan and/or any successor trust and its participants and beneficiaries, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds or property wrongfully held by Defendants;

F.  Approve a fair and equitable plan of allocation of any proceeds recovered on behalf of the Plan and/or any successor trust such that the Plan and its participants will be made whole;

G.  Appoint an independent trustee of the ESOP to oversee the allocation of proceeds recovered on behalf of the Plan and/or any successor trust consistent with the terms of the Plan and ERISA;

H.  Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

I.  Award prejudgment and post-judgment interest; and

J.  Award such other and further relief as the Court deems just and reasonable.

Dated: February 7, 2023            Respectfully submitted,

s/ *Paul J. Lukas*

Paul J. Lukas, MN Bar No. 022084X
Brock J. Specht, MN Bar No. 0388343
NICHOLS KASTER, PLLP
80 South 8th St., Suite 4700
Minneapolis, MN 55402
(612) 256-3200
(612) 338-4878 (fax)
lukas@nka.com
bspecht@nka.com

Daniel Feinberg (*pro hac vice to be filed*)
Todd Jackson (*pro hac vice to be filed*)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
(510) 269-7998
(510) 269-7994 (fax)
dan@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiff*