## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jessica Kloss, on behalf of the TPI Hospitality Employee Stock Ownership Plan and a class of similarly situated participants of the plan, | Case No. 23-cv-301 (DWF/SGE) |
| Plaintiff, | **ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY** |
| v. | |
| Argent Trust Co.; Torgerson Properties, Inc. (d/b/a TPI Hospitality); TPI Hospitality ESOP Committee; and Thomas R. Torgerson, | |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion to Compel Defendant Argent Trust Co. ("Argent") to produce documents. (Dkt. 202.) For the reasons set forth below, the Motion to Compel is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

This case arises from two transactions that Plaintiff alleges were prohibited by ERISA because they were not in the best interest of the TPI Hospitality Employee Stock Ownership Plan ("ESOP"). (Dkt. 114 ¶ 3.) The first transaction occurred in 2018 and involved a business loan to Defendant Torgerson Properties, Inc. ("TPI"), which was secured by TPI and Defendant Thomas Torgerson using the ESOP's stock as collateral, but the ESOP received nothing in return. (Dkt. 169 at 1; Dkt. 114 ¶¶ 3, 8-9.) The second

transaction involves the December 15, 2020, sale of %100 of the ESOP's stock to Defendant John Dammermann for $500,000. (Dkt. 114 ¶ 3.)

At all relevant times, Defendant Argent Trust Company ("Argent") was the Trustee of the ESOP. (Dkt. 114 ¶ 6, 33, 91; Dkt. 152 at 4.) And both Plaintiff[1] and Argent allege that TPI was the acting administrator of the Plan as the sponsoring employer. (Dkt. 114 ¶ 33; Dkt. 152 at 3-4.)

In 2020, due to the negative financial impact of COVID-19 pandemic on the hospitality industry, TPI explored the sale of the company to a third party. (Dkt. 114 ¶ 115; Dkt. 136 at 2.) In October 2020, Defendant John Dammermann offered to buy the ESOP's shares of the TPI stock. (Dkt. 114 ¶ 117.) TPI "advised Argent that the termination of the ESOP would occur and there would be some payment amount to the ESOP shareholders upon termination." (Dkt. 114 ¶ 117.)

In connection with the proposed sale, Argent signed an engagement agreement with TPI on October 27, 2020, to serve as trustee for the ESOP in the transaction. (Dkt. 153-2.) In addition to its engagement agreement with TPI, Argent entered into an indemnification agreement with Thomas Torgerson and Tammy Bourgon on December 29, 2020. (Dkt. 153-1.) This indemnification agreement is at the center of the current discovery dispute.

---

[1] Plaintiff also alleges that the ESOP Committee was the administrator of the plan, comprised of William R. Upshaw (Chief Executive Officer of TPI Hospitality), Sheryl Walton (Chief Financial Officer of TPI Hospitality), Pete Bromelkamp (Chief Human Resources Officer of TPI), Chris Flagg (Chief Investment Officer of TPI), and Kathy Aamot (Chief Administrative Officer of TPI). (Dkt. 114 ¶¶ 48-61.)

On December 29, 2020, Argent approved the "2020 Transaction" wherein %100 of the ESOP's stock sold for $500,000. (Dkt. 152 at 10; Dkt. 114 ¶¶ 121, 124.) Thereafter, the TPI Board of Directors terminated the ESOP. (Dkt. 114 ¶ 131.)

On January 7, 2025, Plaintiff filed the current Motion to Compel Discovery. (Dkt. 202.) In her Motion, Plaintiff asked this Court to order Argent to produce a subset of documents for *in camera* review, and to order Argent to produce all documents that Argent either redacted or withheld on the basis of attorney-client privilege. (Dkt. 203.) Argent filed their opposition on January 14, 2025. (Dkt. 215.) Argent opposed Plaintiff's request for *in camera* review of documents. (Dkt. 215.) Argent also filed Declarations of its in-house attorneys David Williams and Glenn Gunnels in support of its attorney-client privilege claim. (Dkts. 217, 218.)

On January 21, 2025, the Court held a hearing on Plaintiff's motion to compel. (Dkt. 220.) The Court ordered Argent to submit hard copies of the following documents[2] that Plaintiff specifically sought *in camera* review of: 1, 4, 6, 7, 8, 10, 21, 24, 25, 26, 29, 30, 31, 32, 42, 43, 46, 51. (Dkt. 204 at 4.) On February 10, 2025, the Court ordered Argent to submit the remaining documents withheld on the basis of attorney-client privilege in light of its *in camera* review of the first submission of documents. (Dkt. 222.)

---

[2] Throughout this Order, the Court refers to documents provided for *in camera* review by the number it was assigned on Argent's privilege logs. (Dkts. 206-3, 206-4.)

## II.    LEGAL STANDARDS

### A. Attorney-Client Privilege

"Federal common law governs questions of privilege in cases like this where the Court's jurisdiction is based on a federal question." *Christoff v. Unum Life Ins. Co. of Am.*, No. 17-cv-03512 (DWF/KMM), 2018 WL 1327112, at *2 (D. Minn. Mar. 15, 2018) (citing Fed. R. Evid. 502). "The party asserting the attorney-client privilege or the work product doctrine bears the burden to provide a factual basis for its assertions." *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527-28 (D. Minn. 2002), *aff'd*, No. 99-cv-1894 (PAM/JGL), 2002 WL 1303025 (D. Minn. June 6, 2002) (citing *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir.1985)). The attorney-client privilege protects confidential communications between a client and attorney made for the purpose of obtaining legal advice or legal services from disclosure. *See Upjohn v. United States*, 449 U.S. 383, 394-95 (1981); *see also United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). But the attorney-client privilege protection is not absolute.

"[W]here the attorney acts merely as a . . . scrivener for the client, or as a business adviser, the privilege is inapplicable." *United States v. Horvath,* 731 F.2d 557, 561 (8th Cir. 1984); *see also United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citation omitted) ("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply."). And communications are not protected by the privilege if they are made by or to an in-house lawyer related to business matters or management decisions. *Boca Investerings P'Ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998). "For the attorney-client privilege to

4

apply, the legal advice must predominate over the business advice, and not be merely incidental." *Krueger v. Ameriprise Fin., Inc., LLC*, No. 11-cv-2781 (SRN/JSM), 2014 WL 12597432, at *10 (D. Minn. May 7, 2014) (citations omitted). "Further, '[p]reliminary drafts of contracts are generally protected by attorney-client privilege, since [p]reliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege.'" *Id.* (alteration in original) (quoting *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab.*, 632 F. Supp. 2d 1370, 1382 (M.D. Ga. 2009)). In sum, "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus., Inc. v, Meredith*, 572 F.2d 596, 602 (8th Cir 1977).

### B. Fiduciary Exception to the Attorney-Client Privilege

"[I]n the ERISA context, the fiduciary exception provides that 'an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matter of plan administration.'" *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999) (quoting *Becher v. Long Is. Lighting Co.* (*In re Long Is. Lighting Co.*), 129 F.3d 268, 272 (2d Cir. 1997)); *Krueger*, 2014 WL 12597432, at *11 (same); *Carr v. Anheuser-Busch Cos.*, 791 F. Supp. 2d 672, 675 (E.D. Mo. 2011) ("The fiduciary exception applies only to communications that involve plan administration."). While the Eighth Circuit has not expressly adopted the fiduciary exception "generally or in ERISA cases, its application by a district court in the ERISA context has gone undisturbed." *Christoff*, 2018 WL 1327112, at *3.

"The fundamental question for whether the fiduciary exception applies is whether the communication is on matters of plan administration." *Scalia v. Reliance Tr. Co.*, No. 17-cv-4540 (SRN/ECW), 2020 WL 2111368, at *7 (D. Minn. May 4, 2020) (citation omitted); *see also Carr*, 791 F. Supp. at 675 (quoting *Mett*, 178 F.3d at 1064) ("The fiduciary exception applies only to communications that involve plan administration."); *see  also Christoff*, 2018 WL 1327112 at *3 ("Courts applying the [fiduciary] exception in ERISA cases attempt to differentiate between situations in which an ERISA fiduciary obtains legal advice about matters of plan administration, which must be disclosed, and those where the fiduciary seeks advice for non-fiduciary matters, which remain privileged."). Plan administration can include actions such as "discretionary decisions regarding investment or liquidation of plan assets, communications to plan beneficiaries, and plan benefits claim and review . . . ." *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 496 (M.D.N.C. 2008) (internal citations omitted). "The rationale behind this exception is that the fiduciary is obligated to provide full and accurate information about plan administration to the beneficiaries. . . . [Because] the plan beneficiaries are the 'real client' when a plan administrator consults an attorney about plan administration." *Hardy v. Unum Life Ins. Co. of Am.*, No. 23-cv-563 (JRT/JFD), 2023 WL 4841952, at *3 (D. Minn. July 28, 2023).

Thus, "[c]ourts applying the exception in ERISA cases attempt to differentiate between situations in which an ERISA fiduciary obtains legal advice about matters of plan administration, which must be disclosed, and those where the fiduciary seeks advice for non-fiduciary matters, which remain privileged." *Christoff*, 2018 WL 1327112, at *3.

"Drawing the line between matters of plan administration (which are not protected from disclosure) and communications involving legal advice on non-fiduciary matters (which remain protected) requires 'a fact-specific inquiry, examining both the content and context of the specific communication.'" *Id.* at *3 (quoting *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 48 (D. Mass. 2007)); *see also Olsen v. Standard Ins. Co.*, No. 13-cv-576 (SRN/TNL), 2013 WL 12444579, at *3 (D. Minn. Oct. 17, 2013) ("The cases call for a "fact-specific inquiry" when determining whether the purpose of seeking legal advice is to fulfill the administrator's fiduciary duties or to avoid litigation over his execution of those duties."); *Solis v. Principal Financial Grp., Inc.*, No. 4:10-mc-00045 (TJS), 2011 WL 13290335, at *1 (S.D. Iowa Sept. 6, 2011), *R&R adopted*, No. 4:10-mc-00045 (TJS), 2011 WL 13290334 (S.D. Iowa Oct. 31, 2011) ("[I]f the context and content show that the purpose of the communication was to help the trustee fulfill a fiduciary duty for the benefit of the beneficiaries, it falls under the fiduciary exception. Conversely, if the context and the content show that the purpose of the communication was to help the trustee perform a non-fiduciary function for its own benefit, then the attorney-client privilege should remain.").

However, not all communications fall within the fiduciary exception. "For example, an ERISA fiduciary that obtains legal advice to defend itself against plan beneficiary claims can maintain the confidentiality of otherwise privileged communications." *Christoff,* 2018 WL 1327112, at *2 (citing *Smith*, 245 F.R.D. at 48. This is known as the "liability exception" to the fiduciary exception. *Krueger*, 2014 WL 12597432, at *12. The "liability exception" applies in instances where a fiduciary "seeks the advice of counsel for its own

personal defense in anticipation of adversarial proceedings" because the beneficiaries "are clearly not the 'real' client." *Scalia,* 2020 WL 2111368, at *7 (quoting *Hill v. State St. Corp.*, No. 09-cv-10750 (DJC), 2013 WL 6909524, at *3 (D. Mass. Dec. 30, 2013)).

"[T]he key factor driving the Court's analysis of the application of the liability exception to the fiduciary exception, after taking into account the context and contents of the communication, is whether and 'when the interests of the ERISA plan fiduciary and the plan beneficiaries have diverged sufficiently such that the fiduciary . . . [is acting] in its own interest to defend itself against the plan beneficiaries . . . .'" *Krueger*, 2014 WL 12597432, at *13 (quoting *Tatum*, 247 F.R.D. at 497); *see also Hardy*, 2023 WL 4841952, at *4 ("The relevant inquiry is whether and when an adversarial relationship developed between the parties."). "However, a sufficiently adversarial relationship may arise before the final decision denying benefits." *Christoff*, 2018 WL 1327112, at *3 (citing *Olsen*, 2013 WL 12444579, at *3)).

## III.    DISCUSSION

Plaintiff makes several arguments in support her Motion to Compel. First, she contends that the communications between Williams and Gunnels with Argent are not attorney-client privileged because they were not acting as attorneys. And in the event that the communications do involve legal advice protected by the attorney-client privilege, Plaintiff argues that they fall within the fiduciary exception of the privilege as the communication must have been made in Argent's role as a fiduciary for the ESOP. Next, Plaintiff contends that even if Argent were acting for its own benefit in negotiating the indemnification agreement, the indemnification agreement "was one of the agreements

comprising the 2020 Transaction" because Argent would not have approved of the sale without it. (Dkt. 204 at 11.) In support, Plaintiff argues that Argent's engagement agreement was signed on October 27, 2020, (Dkt. 153-2) and thus the subsequent December indemnification agreement must have been a condition of Argent's agreement to the 2020 Transaction. Plaintiff also alleges that Argent "signed the Indemnification Agreement only in its capacity as 'Trustee of the Trust,' not in a corporate capacity." (Dkt. 204 at 11 (citing Dkt. 153-1).)

Argent counters that Williams and Gunnels were not acting as business advisors, but as attorneys giving legal advice to Argent in the documents withheld on the basis of attorney-client privilege. Argent acknowledges that as in-house counsel they do play a business role, but that it already produced hundreds of documents related to their business functions. Argent further contends that the advice from Williams and Gunnells was related to its own protection as Trustee and not a matter of plan administration related to the ESOP. Argent also argues that Plaintiff's conclusory attempt to label the indemnification agreement as part of the 2020 Transaction is unsupported by evidence. (Dkt. 215 at 17.) Finally, Argent argues that because the communications relate to its own liability and protection, the fiduciary exception does not apply.

### A. Indemnification Agreement

The Court first addresses the parties' disagreement on whether the December indemnification agreement was an act of plan administration. If the indemnification agreement was an act of plan administration, then the fiduciary exception applies, and the attorney-client privilege will not protect the communications at issue unless an exception

applies. Central to this determination is whether the indemnification agreement was for the benefit of Argent or the ESOP.

Considering the parties' arguments and the content and context of the indemnification agreement, the Court determines that the indemnification agreement was for the benefit of Argent and not the ESOP. First, the text of the indemnification agreement contradicts Plaintiff's argument that it was an act taken in Argent's capacity as Trustee. For example, the first sentence of the indemnification agreement states clearly that it is between "Argent Trust Company (the Trustee)" and "Thomas R. Torgerson and Tammy R. Bourgon." (Dkt. 153-1 at 2.) While the text indicates that Argent is the Trustee, it does not state that it was acting in its capacity as Trustee. Rather, the language within the indemnification agreement makes clear that Argent was acting for its own benefit. (Dkt. 153-1 at 2.) And the signature block shows that Argent's Senior Vice President, Stephen A. Martin, signed "solely in his capacity as an authorized officer of Argent Trust Company." (Dkt. 153-1 at 5.) Contrast this language with the Stock Purchase Agreement where it is abundantly clear that Argent was "acting solely in its capacity as the trustee of the Trust, and not in its individual or corporate capacity (the "Trustee")." (Dkt. 151-5 at 6; 151-6 at 17.)

Second, the indemnification agreement appears to be a condition of Argent's continued engagement as Trustee, not a condition of the 2020 Transaction. While the Court notes that the indemnification agreement is listed as a transaction document in the Stock Purchase Agreement, its inclusion there is at the request of Thomas Torgerson. (Dkt. 173 at 4; Dkt. 206-9 at 3 (Torgerson notifying Argent that he is instructing the inclusion of the

agreement into Stock Purchase Agreement).) Moreover, review of the communications already disclosed about the indemnification agreement make clear that it was a condition of Argent's continued engagement, not the 2020 Transaction. (Dkt. 206-9 at 2-6.)

Lastly, at the hearing Plaintiff argued that Argent could have amended its October engagement agreement but instead negotiated the indemnification agreement as a part of the 2020 Transaction. Defendant countered that the engagement agreement could not have been amended because it was with TPI and TPI was not in a position to indemnify Argent, thus Argent sought the indemnification agreement with Thomas Torgerson and Tammy Bourgon to supplement its engagement agreement. The indemnification agreement itself supports Argent's argument because it refers back to the engagement agreement. (Dkt. 153-1 at 2 ("The Trustee agrees that the fiduciary services engagement agreement with the Company and the indemnifications provisions therein will be the first recourse for the Trustee with respect to and Damages . . . .").) In sum, this Court is not persuaded that the indemnification agreement was an act made in Argent's fiduciary capacity simply because it took place after Argent's original engagement agreement. For the reasons noted above, the Court concludes that the indemnification agreement was not an act of plan administration, but a non-fiduciary act taken for Argent's own benefit. *Solis*, 2012 WL 12597432, at *11.

## B. Application of the Fiduciary Exception

The Court has analyzed the documents to discern whether the purpose of the communication was to help Argent fulfill a fiduciary duty for the benefit of the ESOP or to assist Argent in a non-fiduciary function for its own benefit. In reviewing the documents,

11

the Court based its determinations on the content and context of each document, the descriptions in the privilege logs, and the individuals sending and receiving the communication. Set out below are the specific documents this Court is ordering Argent to produce, and the rationale for rejecting Argent's withholding of those documents based on the assertion of attorney-client privilege. As for documents not listed below, the Court determined that they were privileged and shall not be produced.[3]

### **Document 1**

Argent characterizes this redacted document as an email communication involving advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations (Dkt. 206-3, Row 1.) The unredacted email chain below discusses the stock purchase agreement. There is no evidence of legal advice in the email or that legal advice was sought. The Court finds this email does not deal with legal advice, and therefore, is not privileged.

### **Document 3**

Argent characterizes this redacted document as an email communication involving advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations (Dkt. 206-3, Row 3.) There is no evidence of legal advice in the email or that legal advice was sought. The Court finds this document is not privileged.

---

[3] For the convenience of the parties and for clarity, the Court found the following documents produced for *in camera* protected from disclosure under the attorney-client privilege: 2, 4, 6, 8, 11, 13, 14, 17, 19, 20, 22, 28, 31, 32, 33, 34, 35, 36, 39, 41, 42, 43, 44, 45, 46, 48, 49, 50, 51, 58.

**Document 5**

Argent characterizes this redacted document as attorney notations containing legal advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt.  206-3, Row 5.) The redacted portion of Document 5 is a handwritten notation dated December 15, 2020. The email chain upon which the notation is written discusses a transaction Argent was taking as Trustee on behalf of the ESOP. The notation itself has no evidence of legal advice or that legal advice was sought. The Court finds this document falls within the fiduciary exception, and therefore, is not privileged. *Krueger*, 2014 WL 12597432, at *11 ("[When the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.") (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

**Document 7**

Argent characterizes this redacted document as attorney notations containing legal advice to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-3, Row 7.) The redacted portion of Document 7 is one sentence of handwritten notes. The unredacted portion of the document demonstrates that the notes reflect discussion that took place at an Argent ESOP Committee meeting that included matters of plan administration. The Court finds this document falls within the fiduciary exception, and therefore, is not privileged. *Krueger*, 2014 WL 12597432, at *11 ("[When the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under

ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.") (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

### Document 9

Argent characterizes this redacted document as attorney notations containing legal advice to Argent regarding Argent's engagement agreement provisions and negotiations (Dkt. 206-3, Row 9.) Document 9 is the same handwritten notes with the same redacted portion as Document 7. For the same reason the Court provided above in its analysis of Document 7, the Court finds Document 9 falls within the fiduciary exception, and therefore, is not privileged. *Krueger*, 2014 WL 12597432, at *11 ("[When the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.") (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

### Document 10

Argent characterizes this redacted document as attorney notations containing legal advice to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-3, Row 10.) The redacted portion of Document 10 is part of one sentence of handwritten notes. The unredacted portion of the document demonstrates that the notes reflect discussion that took place at an Argent ESOP Committee meeting that included

matters of plan administration. The Court finds this document falls within the fiduciary exception, and therefore, is not privileged. *Krueger*, 2014 WL 12597432, at *11 ("[When the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.") (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

### **Document 12**

Argent characterizes this redacted document as attorney notations containing legal advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-3, Row 12.) Document 12 is the same email chain with handwritten notes as Document 5. For the same reason the Court provided above in its analysis of Document 5, the Court finds this document falls within the fiduciary exception, and therefore, is not privileged.

### **Document 15**

Argent characterizes this redacted document as attorney notations containing legal advice to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 15.) Document 15 is the same handwritten notes as Document 10. For the same reason the Court provided above in its analysis of Document 10, the Court finds this document falls within the fiduciary exception, and therefore, is not privileged.

**<u>Document 16</u>**

Argent characterizes this redacted document as attorney notations containing legal advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 16.) Document 16 is the same email chain with handwritten notes as Documents 5 and 12. For the same reason the Court provided above in its analysis of Document 5 and 12, the Court finds this document falls within the fiduciary exception, and therefore, is not privileged.

**<u>Document 18</u>**

Argent characterizes this redacted document as an email communication involving advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 18.) The unredacted portion of the email below is the same unredacted email chain as that contained in Documents 1 and 3. There is no evidence of legal advice in the email or that legal advice was sought. The Court finds this document is not privileged.

**<u>Document 21</u>**

Argent characterizes this redacted document as attorney notations involving advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 21.) Argent's privilege log identifies the document as being created by David Williams on September 26, 2024, but the document itself has a handwritten date of November 20, 2020. While it is unclear whether the handwritten notes are from an Argent ESOP Committee meeting, the unredacted portion of the handwritten notes discusses matters of plan administration. Moreover, the redacted portion contains no

16

legal advice. The Court finds this document falls within the fiduciary exception and therefore is not privileged. *Krueger*, 2014 WL 12597432, at *11 ("[When the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.") (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

**Document 23**

Argent characterizes this redacted document as an email communication containing advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 23.) The copy provided to the Court does not indicate which portion of the email is redacted. However, there is no evidence of legal advice in the email or that legal advice was sought. The Court finds this document is not privileged.

**Document 24**

Argent characterizes this withheld document as an email communication from it to in-house counsel requesting legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 24.) While the email does seek advice, the content and context of the email, and Documents 25 and 26 which are related, demonstrate that the advice relates to a matter of plan administration — a decision regarding plan assets. *Scalia,* 2020 WL 2111368, at *7. This is evidenced by the email's specific reference to sections of Documents 25 and 26, and the signature line of Documents 25 and 26 showing that the Documents involve an ESOP transaction. The Court finds this document falls

17

within the fiduciary exception and therefore is not privileged. *Krueger*, 2014 WL 12597432, at *11 ("[When the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.") (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

### Documents 25-26

Argent characterizes these withheld documents as draft documents necessary for the provision of legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Rows 25-26.) As addressed above in the Court's analysis of Document 24, these documents pertain to a matter of plan administration and thus fall within the fiduciary exception of the attorney-client privilege.

### Document 27

Argent characterizes this redacted document as an email communication involving advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 27.) Document 27 is the same email chain, redacted and unredacted as Document 18. There is no evidence of legal advice in the email or that legal advice was sought. The Court finds this document is not privileged.

### Document 29

Argent characterizes this redacted document as an email communication involving advice of in-house counsel to Argent regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 29.) There is no evidence of legal advice in the

redacted portion of the email or that legal advice was sought or given. The Court finds this redacted portion of the email does not deal with legal matters and therefore is not privileged. Moreover, the unredacted portion of the email chain discusses matters of plan administration. Thus, the context of the communication suggests it was also on a matter of plan administration subject to the fiduciary exception.

### Document 30

Argent characterizes this redacted document as an email communication between attorneys containing legal advice about Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 30.) The unredacted portion of the email chain below discusses the indemnification agreement, but there is no evidence of legal advice in the email or that legal advice was sought or given. The Court finds this document is not privileged.

### Document 37

Argent characterizes this withheld document as an email communication from Argent requesting legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 37.) The chain inquires about an Argent ESOP Committee meeting. Moreover, the email does not contain legal advice. The Court finds this document is not privileged.

### Document 38

Argent characterizes this withheld document as an email communication from Argent requesting legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 38.) The context and content of the email chain shows that

the email communication was on a matter related to the ESOP and asks about an ESOP Committee meeting. Moreover, the email does not contain legal advice. The Court finds this document is not privileged.

### Document 40

Argent characterizes this withheld document as an email communication from Argent requesting legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 40.) The context and content of the email chain shows that the email communication was on a matter related to the ESOP and asks about an ESOP Committee meeting. A part of this email is the same email contained within Document 37. Moreover, the email does not contain legal advice. The Court finds this document is not privileged.

### Document 47

Argent characterizes this withheld document as an email communication from Argent requesting legal advice regarding Argent's engagement agreement provisions and negotiations (Dkt. 206-4, Row 47.) The context and content of the email chain shows that the email communication was on a matter related to the ESOP and asks about an ESOP Committee meeting. A part of this email is the same email contained within Documents 37 and 40. Moreover, the email does not contain legal advice. The Court finds this document is not privileged.

### Document 52

Argent characterizes this redacted document as an email communication from Argent containing legal advice regarding Argent's engagement agreement provisions and

negotiations. (Dkt. 206-4, Row 52.) The context and content of the unredacted portion of the email chain shows that the email communication was on a matter related to a matter of plan administration — the stock purchase agreement. A part of this email is the same email contained within Document 29. Similar to the Court's reasoning in Document 29, to the extent that the email contains advice, it relates to a matter of plan administration and is subject to the fiduciary exception. The Court finds this document is not privileged.

### Document 53

Argent characterizes this withheld document as an email communication from in-house counsel to Argent containing legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 53.) The context and content of the email do not indicate that legal advice was sought or given. The Court finds this document is not privileged.

### Document 54

Argent characterizes this withheld document as an email communication from Argent to in-house counsel containing legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 54.) The email chain is the same as Docket 53 but with the addition of a reply email at the very top of the document. The context and content of the email do not indicate that legal advice was sought or given. The Court finds this document is not privileged.

### Document 55

Argent characterizes this withheld document as an email communication from in-house counsel to Argent containing legal advice regarding Argent's engagement agreement

provisions and negotiations. (Dkt. 206-4, Row 55.) The email chain is the same as Document 53 and Document 54 but with the addition of a reply email at the very top of the document. The context and content of the email do not indicate that legal advice was sought or given. The Court finds this document is not privileged.

### **Document 56**

Argent characterizes this withheld document as an email communication from in-house counsel to Argent containing legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. 206-4, Row 56.) The email chain is the same as Documents 53, 54, and 55 but with the addition of a reply email at the very top of the document. The context and content of the email do not indicate that legal advice was sought or given. The Court finds this document is not privileged.

### **Document 57**

Argent characterizes this withheld document as an email communication from in-house counsel to Argent containing legal advice regarding Argent's engagement agreement provisions and negotiations. (Dkt. No. 206-4, Row 56.) The email chain is the same as Documents 53, 54, 55, and 56 but with the addition of a reply email at the very top of the document. The context and content of the email do not indicate that legal advice was sought or given. The Court finds this document is not privileged.

## IV. ORDER

For the reasons stated above, and based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel is **GRANTED** in so far as it seeks production of the above identified documents. Argent shall produce the documents within seven (7) days of the date of this order;

2. Plaintiff's Motion to Compel is **DENIED** in so far as it seeks production of documents that the Court has identified as privileged in its *in camera* review.

Dated: April 1, 2025                    *s/Shannon G. Elkins*
                                        SHANNON G. ELKINS
                                        United States Magistrate Judge