**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| Jessica Kloss, on behalf of the TPI Hospitality Employee Stock Ownership Plan and a class of similarly situated participants of the Plan, | ) ) ) ) ) | Case No. 0:23-00301-DWF-SGE |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Argent Trust Co., et al., | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

i

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   SUMMARY OF CLAIMS AND DEFENSES ........................................... 3

III.  LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS ...................... 4

    A.    Pre-Filing Investigation ................................................................ 4

    B.    Litigation ...................................................................................... 4

    C.    Settlement Negotiations ................................................................ 5

IV.   OVERVIEW OF THE SETTLEMENT AND PLAN OF ALLOCATION .............. 6

    A.    Monetary Relief ............................................................................ 6

    B.    Release of Claims ......................................................................... 8

    C.    Attorneys' Fees and Litigation Costs, Settlement Administration Costs, Independent Fiduciary Fees, and Class Representative Service Award ........ 9

V.    CLASS NOTICE AND THE SETTLEMENT CLASS'S REACTION ................. 9

VI.   CAFA NOTICE ...................................................................................... 11

VII.  REVIEW AND APPROVAL BY THE INDEPENDENT FIDUCIARY .............. 11

VIII. THE SETTLEMENT SHOULD BE FINALLY APPROVED .............................. 12

    A.    Plaintiff and Her Counsel Have Adequately Represented the Class .......... 14

    B.    The Proposed Settlement Was Negotiated at Arm's Length ...................... 15

    C.    The Proposed Settlement Provides Fair and Reasonable Compensation .... 16

        1.    The Proposed Settlement Is Fair and Reasonable When Balanced Against the Merits of Plaintiff's Claims ........................................... 17

        2.    The Complexity, Expense, Risk, and Delay of Further Litigation Support Final Approval .................................................................... 19

        3.    The Proposed Method of Distributing Relief to the Class Is Effective ................................................................................................ 20

       4.     The Terms of the Proposed Award for Attorneys' Fees Present No Obstacle to Approval ........................................................................ 21

   D.     The Proposed Settlement Treats Class Members Equitably ...................... 22

   E.     The Remaining *Van Horn* Factors Support Final Approval ........................ 24

IX.    THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES ............................................................................................... 24

X.     CONCLUSION ...................................................................................... 25

## I.    INTRODUCTION

On behalf of herself and the Settlement Class, Plaintiff seeks an Order approving the proposed Settlement that provides substantial relief to a class of former participants and beneficiaries in the TPI Hospitality, Inc. Employee Stock Ownership Plan ("ESOP" or "Plan").[1] This Settlement fully resolves Plaintiff's claims that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with, among other things, the 2020 transaction whereby 100% of the Plan's stock in Torgerson Properties, Inc. (d/b/a TPI Hospitality, Inc.) ("TPI") was sold to John Dammermann for an amount that Plaintiff alleges was less than fair-market value.

This Settlement comes after two rounds of motions to dismiss—in which some of Plaintiff's claims survived, while others did not—and extensive fact discovery including substantial document productions and the depositions of Plaintiff and several key fact witnesses. Under the terms of the proposed Settlement Agreement, TPI and/or its insurers will pay, or cause to be paid, $500,000 (the "Settlement Amount") into a settlement fund, which will be allocated *pro rata* among members of the Settlement Class pursuant to a Plan of Allocation (after deduction of any Court-approved attorneys' fees and litigation expenses, settlement administration costs, Independent Fiduciary fees, and class representative service award).

---

[1] The proposed Class Action Settlement Agreement ("Settlement Agreement") was previously filed in connection with Plaintiff's Motion for Preliminary Approval of Class Action Settlement. Capitalized terms used but not otherwise defined herein have the same meanings as set forth in the Settlement Agreement filed with this Court on June 30, 2025, ECF No. 275-1.

In its Order granting preliminary approval, this Court "preliminarily approve[d] the Settlement Agreement as fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing …." ECF No. 277 ¶ 4. This Court found "on a preliminary basis that the Settlement Agreement falls within the range of reasonableness and was the product of informed, good-faith, arm's-length negotiations between the Parties and their counsel, and therefore meets the requirements for preliminary approval and is sufficient to warrant sending notice to the Class." *Id.*

Events following the Court's preliminary approval of the Settlement further confirm the appropriateness of the Court's determination. The Class Notice was sent to all of the more-than 1,200 individuals identified as Class Members to advise the Settlement Class of the proposed Settlement and its terms. Declaration of Lisa Pavlik ("Pavlik Decl.") ¶ 7; Declaration of Brock J. Specht ("Specht Decl.") ¶ 19. To date, no Class Members have submitted objections to the Settlement terms, the requested attorneys' fees, litigation expenses, settlement administration costs, Independent Fiduciary fees, or the proposed service award to the class representative. Pavlik Decl. ¶ 13; Specht Decl. ¶ 19. In addition, pursuant to Department of Labor regulations, an Independent Fiduciary, Fiduciary Counselors, has reviewed the Settlement and determined that "[t]he Settlement terms[] … are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone[]" and that "[t]he provisions [of the Plan of Allocation] are cost-effective and fair to Class Members in terms of both calculation and

distribution." Specht Decl., Ex. A at 1, 5-6;[2] *see also* ECF No. 275-1 § 2.3 (calling for an Independent Fiduciary to be engaged to review the Settlement and determine compliance with DOL Prohibited Transaction Exemption (PTE) 2003-39).

For these reasons, and for the reasons discussed below, the Settlement is fair, reasonable, and adequate. Accordingly, Plaintiff respectfully requests that the Court issue an Order certifying the Settlement Class for settlement purposes and granting final approval of the Settlement.

## II.    SUMMARY OF CLAIMS AND DEFENSES

This class action was brought on behalf of all participants and beneficiaries in the Plan who vested under the terms of the Plan, excluding Defendants and their immediate family. Plaintiff, as an individual and as a representative of the class, filed this action on February 7, 2023, and later amended on August 5, 2024, and alleged claims against Defendants Argent Trust Co. ("Argent"), TPI, and various related entities and individuals (collectively, "Defendants"). *See* ECF No. 1; ECF No. 113; ECF No. 114. Plaintiff asserted various causes of action under ERISA, 29 U.S.C. §§ 1001 *et seq.*, related to two transactions. First, Plaintiff alleged that certain Defendants breached their fiduciary duties and engaged in prohibited transactions through the use of the ESOP's stock as collateral for a 2018 loan to TPI (the "2018 Citizens Loan"). ECF No. 113; ECF No. 114. Second, Plaintiff alleged fiduciary breaches and prohibited transactions arising from the sale of TPI,

---

[2] Citations to specific pages of previously filed documents utilize the ECF pagination, while citations to specific pages of documents filed contemporaneously with this motion utilize the document's internal pagination.

100% of which was owned by the ESOP, to John Dammermann in 2020 (the "2020 Transaction"). ECF No. 113; ECF No. 114.

Defendants deny Plaintiff's allegations and contend that their processes fully complied with ERISA's standards. Defendants also contend that they committed no fiduciary breaches or prohibited transactions of any kind with respect to the administration of the Plan. Defendants further challenge Plaintiff's damages allegations and deny that Plaintiff and the class are entitled to recovery of any damages whatsoever.

## III.    LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

### A.    Pre-Filing Investigation

Class Counsel undertook an extensive and thorough investigation of the claims asserted in this lawsuit starting months before the filing of the Complaint and continuing through discovery. Specht Decl. ¶ 13. Prior to filing the original Complaint, Class Counsel's attorneys and staff undertook a careful investigation that entailed examining Plan documents and participant disclosures, analyzing public filings from the Plan, reviewing filings of TPI and its affiliated entities related to TPI's business operations and hotel and resort developments in Minnesota and Florida, ascertaining potential injury to the Plan, and conducting legal research related to the Plan's potential claims against Defendants. *Id.*

### B.    Litigation

After this extensive investigation, Plaintiff filed the original Class Action Complaint on February 7, 2023. ECF No. 1. On April 17, 2023, Defendant TPI and Defendant Argent moved to dismiss the original Complaint. ECF No. 35; ECF No. 40. The Court granted in part and denied in part each of Defendants' motions. ECF No. 79. After commencing

discovery, Plaintiff filed an Amended Complaint on August 5, 2024. ECF No. 113; ECF No. 114. Defendant TPI and Defendant Argent filed motions to dismiss the Amended Complaint in September 2024. ECF No. 134; ECF No. 146; ECF No. 150.

While these motions were pending, extensive fact discovery continued. Collectively, the parties answered more than 45 interrogatories, produced more than 143,000 pages of documents, and received more than 30,000 pages of documents in response to subpoenas to non-parties. Specht Decl. ¶ 15. The parties also took four depositions of fact witnesses, including Plaintiff Jessica Kloss. *Id.* The parties met and conferred on several discovery disputes and engaged in motion practice regarding Argent's privilege log. *Id.* Additionally, Plaintiff's counsel consulted with experts regarding liability and damages. *Id.*

On April 8, 2025, the Court issued an Order granting in part and denying in part the motions to dismiss the Amended Complaint. ECF No. 242 (dismissing all claims regarding the 2018 Citizens Loan, as well as two of the claims regarding the 2020 Transaction).

### C.    Settlement Negotiations

Pursuant to Federal Rule of Civil Procedure 26(f)(2) and this Court's Order for pretrial scheduling conference, ECF No. 84 § II.A, the parties held initial settlement discussions at the outset of the case, and the parties continued to periodically discuss potential settlement through the pendency of this matter. Specht Decl. ¶ 16. After completing substantial fact discovery and in the wake of the Court's April 8, 2025, order granting in part and denying in part the motions to dismiss the Amended Complaint, ECF No. 242, the parties agreed to a settlement in principle to fully resolve this case in May

2025. Specht Decl. ¶ 16; *see* ECF No. 267 (notifying the Court of the parties' settlement in principle). The terms of the Settlement Agreement were negotiated and finalized in the following weeks. Specht Decl. ¶ 16.

## IV.    OVERVIEW OF THE SETTLEMENT AND PLAN OF ALLOCATION

As this Court has preliminarily found, "the Settlement Agreement falls within the range of reasonableness and was the product of informed, good-faith, arm's-length negotiations between the Parties and their counsel[]…." ECF No. 277 ¶ 4.

### A.    Monetary Relief

Under the Settlement, TPI and/or its insurers will pay, or cause to be paid, $500,000 into an escrow account ("Settlement Fund Account"). ECF No. 275-1 §§ 1.12, 2.5, 7.1. The Settlement Fund Account will be a non-interest-bearing Qualified Settlement Fund Account within the meaning of Treas. Reg. 26 C.F.R. § 1.468B-1.[3] *Id.* at § 7.1. Deductions for Court-approved (a) attorneys' fees and litigation expenses, (b) settlement administration costs, (c) expenses associated with the Independent Fiduciary, and (c) class representative service award will be made from the Settlement Amount. *See id.* §§ 7.6, 8.2, 9.1. After any such deductions are made, the Net Settlement Amount will be distributed to Class Members according to the Plan of Allocation. *See id.* §§ 7.6, 7.7, 8.2, 9.1.

Class Members will not have to make a claim to receive their share of the Net Settlement Amount. *See* ECF No. 275-1 § 8.2.3; ECF No. 272-2 § 3(b); Pavlik Decl., Ex.

---

[3] The proposed Settlement Fund Account will be non-interest-bearing, as the administrative costs associated with the tax-related paperwork for an interest-bearing account are expected to outweigh any potential interest earned.

A at 2, 4. The Plan of Allocation will allocate the Net Settlement Amount equitably among Class Members. ECF No. 272-2 § 2. The Plan of Allocation provides for a *pro rata* distribution of funds based on the total number of vested shares of TPI stock allocated to each Class Member at any time since the Plan's inception relative to the total number of vested shares allocated to the ESOP accounts of all Class Members at any time since the Plan's inception. *Id.* Under this Plan of Allocation, each Class Member will get a proportional share of the Net Settlement Amount based on their proportional interest in the ESOP prior to its termination. *Id.*

The Plan of Allocation also provides that no check will be issued to a Class Member if such Class Member's individual allocation amount falls below the *de minimis* threshold of $10.00. *Id.* § 4. If such circumstances arise, the funds will be proportionally reallocated to the other Class Members using the *pro rata* formula. *Id.* The purpose of this provision is to avoid wasting assets in situations where the administrative expense of processing and delivering the payment would not be reasonable in light of the minimal amount of the allocation. *See* Specht Decl., Ex. A at 5-6 (finding the *de minimis* threshold of $10.00 to be part of a reasonable Plan of Allocation that includes provisions that are "cost-effective and fair to Class Members in terms of both calculation and distribution").

The Settlement Administrator, Simpluris, is responsible for calculating each Class Member's *pro rata* share under the Plan of Allocation and distributing the funds by issuing checks to Class Members. ECF No. 272-2 §§ 2-3; Pavlik Decl. ¶ 14. Settlement checks will expire no later than 120 days after the issue date and, to the extent any funds remain

in the Settlement Fund Account after the expiration date of the checks, the remaining funds will be disbursed to a *cy pres* recipient, the Pension Rights Center. ECF No. 272-2 § 5.

### B.    Release of Claims

In exchange for the relief provided by the Settlement, Plaintiff and the Settlement Class will release Defendants and their Related Entities from all Claims asserted in this lawsuit or otherwise arising from the facts alleged in the pleadings. ECF No. §§ 4.1-4.2. This includes claims (i) relating to the ESOP, the value of the ESOP participants' holdings in the EOSP, or the termination of the ESOP; (ii) relating to the 2018 Citizens Loan (as defined in the Amended Complaint) and the ESOP's pledged TPI stock to Citizens Bank; (iii) relating to the impact of the Margaritaville Resort in Fort Myers Beach on the value of TPI as of December 29, 2020; (iv) relating to the 2020 Transaction and its alleged component parts (as described in paragraphs 115-151 of the Amended Complaint); (v) relating to any personal guarantees of Thomas Torgerson or any other Defendant in connection with the loan obligations of TPI or of the joint ventures of which it was or is a part and any release of those guarantees; (vi) relating to the December 29, 2020, indemnification agreement among Argent, Thomas Torgerson, and Tammy Bourgon; or (vii) otherwise arising from the facts alleged in the pleadings or that could have been brought in the Lawsuit.[4]

---

[4] This is a general summary of the release. For the full language, see section 4 of the Settlement Agreement, ECF No. 275-1.

C.    **Attorneys' Fees and Litigation Costs, Settlement Administration Costs, Independent Fiduciary Fees, and Class Representative Service Award**

Plaintiff has moved for: (1) an award of reasonable attorneys' fees in the amount of $100,000 to Class Counsel; (2) reimbursement of $27,807.75 in litigation costs and expenses incurred by Class Counsel; (3) $13,446 for settlement administration costs; (4) $15,000 for the services of the Independent Fiduciary; and (5) a service award of $2,500 to Plaintiff Jessica Kloss, in recognition of her valuable service as the sole class representative. *See* ECF No. 279. Subject to Court approval, such amounts will be paid from the Settlement Amount. ECF No. 275-1 § 7.6. Pursuant to the Court's Order preliminarily approving the Settlement, the proposed fees, costs, and service award were described in the Class Notice. *See* ECF No. 277 § 10 (approving proposed Class Notice and granting Class Counsel and the Settlement Administrator discretion to make non-material edits to the format of the Class Notice); ECF No. 272-3 (proposed Class Notice); Pavlik Decl. ¶ 7, Ex. A (Class Notice mailed by Simpluris).

## V.    CLASS NOTICE AND THE SETTLEMENT CLASS'S REACTION

Class Counsel has overseen the issuance of the Court-approved Class Notice in accordance with the Order preliminarily approving the Settlement. *See* ECF No. 277 § 10 (approving proposed Class Notice and granting Class Counsel and the Settlement Administrator discretion to make non-material edits to the format of the Class Notice).[5]

---

[5] Pursuant to the Court's Order preliminarily approving the Settlement, non-material edits were made to the Class Notice to ensure an efficient notice program including, for example, a revision to the estimated size of the Settlement Class to reflect the information in the Class Member list which the Settlement Administrator received. *Compare* ECF No. 272-

The Declaration of Lisa Pavlik, filed herewith on behalf of the Settlement Administrator, Simpluris, demonstrates the efficiency of the notice program. *See generally* Pavlik Decl. On or before September 29, 2025, the Class Notice was mailed to 1,226 persons identified as Class Members. Pavlik Decl. ¶ 7; Specht Decl. ¶ 19. The Class Notice was mailed to the last known address of each Class Member provided by TPI unless an updated address was obtained by the Settlement Administrator through its efforts to verify Class Members' addresses. Pavlik Decl. ¶¶ 5-6; *see* ECF No. 275-1 § 2.2.2. The Class Notice advised Class Members of the October 31, 2025 deadline for objecting to any part of the Settlement or to the requested attorneys' fees and expenses, settlement administration costs, Independent Fiduciary fees, or service award and of the November 21, 2025 Fairness Hearing. Pavlik Decl., Ex. A 1-2, 4. To date, none of the 1,226 Class Notices sent have been returned as undeliverable. Pavlik Decl. ¶ 8.

The Settlement Administrator also established a settlement website, https://TPIESOPSettlement.com, which provides a summary description of the Settlement and case-related documents. Pavlik Decl. ¶ 9. The settlement website notes the October 31, 2025 objection deadline and that the Fairness Hearing will occur on November 21, 2025. *Id.* The settlement website also sets forth an email address, toll-free telephone number, and mailing address at which the Settlement Administrator may be contacted and a phone number and mailing addresses at which Class Counsel may be contacted. *Id.* As of the date

---

3 (proposed Class Notice), *with* Pavlik Decl. ¶ 7, Ex. A (Class Notice mailed by Simpluris); *see also* Pavlik Decl. ¶ 5.

of this submission, the settlement website has tracked 56 unique users who registered 147 page views. *Id.*

In its Order preliminarily approving the Settlement, this Court found "that the form and content of the Class Notice meet the requirements of Rule 23 and due process, including 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution." ECF No. 277 ¶ 10. The Court further found "that the proposed notice plan represents the best notice practicable under the circumstances …." *Id.*

The instant filing is being made in advance of the October 31, 2025 deadline for objections. To date, no Class Members have objected to the Settlement or to the requested attorneys' fees and litigation expenses, settlement administration costs, Independent Fiduciary fees, or service award. *See* Pavlic Decl. ¶ 13; Specht Decl. ¶ 19.

## VI.    CAFA NOTICE

Pursuant to the Settlement Agreement, TPI confirmed in writing to Plaintiff that the notices required by the Class Action Fairness Act of 2025, 28 U.S.C. § 1715, ("CAFA") were served on July 7, 2025. *See* ECF No. 275-1 § 3; Specht Decl. ¶ 18.

## VII.    REVIEW AND APPROVAL BY THE INDEPENDENT FIDUCIARY

The Settlement was reviewed by an Independent Fiduciary, Fiduciary Counselors. As part of its review, Fiduciary Counselors: (1) reviewed key pleadings, decisions, orders, and other materials related to this litigation; (2) interviewed the parties' counsel; (3) reviewed and evaluated the terms of the Settlement Agreement, including the release of claims, the monetary relief to be provided to the Plan, and the Plan of Allocation's method of distributing the monetary relief to Class Members; (4) reviewed Class Counsel's

requests for attorneys' fees, reimbursement of litigation costs, and a service award to the sole class representative. *See* Specht Decl. ¶ 17, Ex. A at 1-6. Fiduciary Counselors determined, *inter alia*, that:

- The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

*Id.*, Ex. A at 1. Based on its determinations about the Settlement, "Fiduciary Counselors (i) authorize[d] the Settlement in accordance with PTE 2003-39; and (ii) g[ave] a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan." *Id.*, Ex. A at 8-9. Fiduciary Counselors also determined not to object to any aspect of the Settlement. *Id.*, Ex. A at 9.

## VIII.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

It is well settled that settlement is a highly favored means of resolving complex class action litigation. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor.") (citation omitted); *see also In re Uponor, F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is presumptively valid.") (internal quotation marks omitted). Settlement spares the litigants

the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Court approval of a proposed class action settlement involves two steps: preliminary and final approval. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). This Court has already preliminarily approved the Settlement. ECF No. 277. Thus, the review of the Settlement is now at the final-approval stage.

The Eighth Circuit has recognized that a class action settlement is a private contract. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005). "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* Under Rule 23(e), a court reviewing a proposed class action settlement must determine whether the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In this determination, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[] …; and (D) the proposal treats class members equitably relative to each other." *Id.*

In addition to these factors, courts within the Eighth Circuit also consider four factors, commonly known as the *Van Horn* factors, to evaluate the fairness of a settlement. *Holt v. Communityamerica Credit Union*, 2020 WL 12604383, at *2 (W.D. Mo. Sept. 4, 2020). These *Van Horn* factors are: "(1) the merits of the plaintiffs' case weighed against

13

the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.*; *see Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

Here, the proposed Settlement checks all of the required boxes. Accordingly, the Court should grant final approval of the Settlement.

### A.    Plaintiff and Her Counsel Have Adequately Represented the Class

Plaintiff and Class Counsel have adequately represented the Class by diligently investigating and prosecuting this action. Among other things, Plaintiff and Class Counsel investigated the relevant factual events, drafted a detailed Class Action Complaint and Amended Class Action Complaint, opposed Defendants' motions to dismiss, successfully moved to compel production of certain documents, and consulted with experts regarding liability and damages. *See* Specht Decl. ¶¶ 13-15; ECF No. 232 (granting in part and denying in part Plaintiff's motion to compel). Additionally, Class Counsel has conducted extensive discovery. Collectively, the parties answered more than 45 interrogatories, produced more than 143,000 pages of documents, and received more than 30,000 pages of documents in response to subpoenas to non-parties. Specht Decl. ¶ 15. The parties also took four depositions of fact witnesses, including Plaintiff Jessica Kloss. *Id.*

The parties reached a settlement in principle to fully resolve this case in May 2025, and the terms of the Settlement Agreement were negotiated and finalized in the following weeks. *Id.* ¶ 16. This Settlement was secured through the efforts of Plaintiff and Class Counsel and provides meaningful monetary relief to the Class, effectively doubling the compensation originally paid to the ESOP in the 2020 Transaction.

In its Order preliminarily approving the Settlement, the Court preliminarily found "that the Named Plaintiff is similarly situated to absent Class Members and therefore typical of the Class, and that she will be an adequate class representative." ECF No. 277 ¶ 6. The Court further described Class Counsel as "experienced and adequate counsel for purposes of this Settlement approval proceeding[.]" *Id.* Plaintiff and Class Counsel have adequately represented the Settlement Class throughout this action. Accordingly, this factor weighs in favor of final approval.

## B.    The Proposed Settlement Was Negotiated at Arm's Length

The proposed Settlement is the product of a good faith, arm's length negotiation by well-informed and experienced counsel. Specht Decl. ¶¶ 4-12, 16; Declaration of Daniel Feinberg ("Feinberg Decl.") ¶¶ 3-4, 9; *see also* ECF No. 272-4; ECF No. 272-5; *see also* ECF No. 277 § 6 (preliminarily finding that Class Counsel "are experienced and adequate"). The parties achieved this result only after hard-fought litigation wherein the parties contested the merits and came to understand the relative strengths of Plaintiff's claims, Defendants' potential defenses, and possible damages. *See* Specht Decl. ¶¶ 15-16. The circumstances under which the parties achieved the proposed Settlement further support the presumption that the proposed Settlement is valid. *See Khoday v. Symantec Corp.*, 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016) ("[A]rm's length negotiations and an absence of collusion is reasonably inferred in light of the fact that the adversarial process of this litigation has been vigorous during the course of the dispute, spanning several years and hundreds of court filings, with adversarial motions pending even at the time of settlement."), *report and recommendation adopted,* 2016 WL 1626836 (D. Minn. Apr. 22,

15

2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017); *In re Emp. Ben. Plans Sec. Litig.*, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[I]ntensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones.").

Moreover, the Independent Fiduciary that reviewed the Settlement, Fiduciary Counselors, determined that "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances." Specht Decl. ¶ 17, Ex. A at 1. Because the proposed Settlement was negotiated at arm's length, this factor also weighs in favor of final approval.

## C.    The Proposed Settlement Provides Fair and Reasonable Compensation

When assessing the adequacy of the relief provided for the class, a court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Relatedly, the Eighth Circuit also considers the "the merits of the plaintiff's case, weighed against the terms of the settlement;" and "the complexity and expense of further litigation[.]" *Van Horn*, 840 F.2d at 607. All of these factors weigh in favor of final approval.

1. ***The Proposed Settlement Is Fair and Reasonable When Balanced Against the Merits of Plaintiff's Claims***

The Eighth Circuit has explained that "[t]he first factor, a balancing of the strength of the plaintiff's case against the terms of the settlement, is [t]he single most important factor." *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018) (internal quotation marks omitted). Balancing the strength of a plaintiff's case against the proposed settlement "is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

Although Plaintiff believes there is strong support for the claims asserted here, there are significant risks inherent in any litigation. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005). Indeed, while this case survived two rounds of motions to dismiss, Defendant John Dammermann was dismissed and six of the ten claims advanced by Plaintiff, including multiple prohibited transaction claims (Counts IV, VI, and VII), the claim related to Argent's indemnification agreement (Count VI), and all claims related to the 2018 Citizens Loan (Counts VII–X), did not advance beyond the pleadings stage. *See* ECF No. 79 (granting in part motions to dismiss); ECF No. 242 (same). For the claims that remain, Defendants vigorously contest liability and damages, and Plaintiff would still need to prevail at trial and on any appeal. This is not guaranteed. *See Herman v. Mercantile Bank, N.A.,* 143 F.3d 419, 422 (8th Cir. 1998) (affirming district court finding that a defendant did not breach its fiduciary duties to an employe stock ownership plan); *see also*

17

*Walsh v. Bowers,* 561 F. Supp. 3d 973, 1008 (D. Haw. 2021) (post-trial order concluding remaining defendants committed no violation of ERISA in employee stock ownership plan transaction).

Balanced against this, the terms of the Settlement compare favorably. For the claims that survived the motions to dismiss, Plaintiff's principal allegation is that "the sale of the ESOP's TPI stock for $500,000 was far less than fair market value." ECF No. 113 ¶ 140; ECF No. 114 ¶ 140. The monetary recovery here, an additional $500,000, effectively doubles the consideration paid to the ESOP, providing certainty and immediacy while avoiding further risks and delays. In this assessment, "courts give great weight to and may rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *George v. Uponor Corp.*, 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) (internal quotation marks omitted). Here, Class Counsel's opinion that the proposed Settlement is fair, reasonable, and adequate also carries significant weight given their extensive experience in complex class litigation and litigation of ERISA claims. *See* Specht Decl. ¶¶ 3-12; Feinberg Decl. ¶¶ 3-5, 10; ECF No. 272-4; ECF No. 272-5; *see also* ECF No. 277 § 6 (preliminarily finding that Class Counsel "are experienced and adequate.").

The review of the Settlement by Fiduciary Counselors, the Independent Fiduciary, further confirms that the proposed Settlement is fair and reasonable when balanced against the merits of Plaintiff's case. Fiduciary Counselors concluded that "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation,

and the value of claims forgone." Specht Decl., Ex. A at 1. Fiduciary Counselors also found "that the $500,000 Settlement Amount is a fair and reasonable recovery given the difficulties involved in proving ESOP cases, the potential recovery, the defenses the Defendants would have asserted, the risks and costs involved in proceeding to trial and the possibility of reversal on appeal of any favorable judgment." *Id.*, Ex. A at 8. Accordingly, this factor weighs in favor of final approval.

### 2. *The Complexity, Expense, Risk, and Delay of Further Litigation Support Final Approval*

ERISA class actions entail a number of uncertainties and risks. "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Claims of fiduciary breach, even if successful, can drag on for a decade or more. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 955, 962 (8th Cir. 2017) (vacating the judgment and remanding in part for further proceedings a case filed in 2006). In short, "[i]n complex cases, [t]he risks surrounding a trial on the merits are always considerable." *Beneli v. BCA Fin. Servs.*, 324 F.R.D. 89, 103-04 (D.N.J. 2018) (internal quotation marks omitted).

"[C]ourts should look closely at whether the fiduciaries investigated alternative actions and relied on outside advisors before implementing a challenged transaction." *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992). But "[e]ven if a trustee fails to make a good faith effort to determine the fair market value of the stock, 'he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway.'" *Herman*, 143 F.3d at 421 (quoting *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919

(8th Cir. 1994)). Moreover, "[d]etermining the value of a company's stock is not an exact science." *Id.* at 422. That is particularly true here, where the stock is not sold in the public market, *cf. id.* (describing difficulty of valuing stock for which there was not a continuously operating market), and where the COVID-19 pandemic had disrupted the industry in which the company was engaged. Thus, continued litigation of this action would have involved significant risk and uncertainty.

Absent settlement, the parties would expend significant time and resources on costly expert discovery, dispositive motions, and trial. Should Plaintiff's claims survive summary judgment, a trial in this case would likely take weeks and would require testimony from several party, non-party, and expert witnesses on complex legal and factual issues. By contrast, the proposed Settlement avoids "the risk and delay inherent in prosecuting this matter through trial and appeal" and "can deliver a real and substantial remedy" to Class Members now. *Cullan & Cullan LLC v. M-Qube, Inc.*, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016).

This is further confirmed by the Independent Fiduciary's review. Fiduciary Counselors found that "Plaintiff faced potential risks in continuing the Litigation[,]" and "[a]bsent settlement, the Parties would expend significant time and resources on costly expert discovery, dispositive motions, and trial." Specht Decl., Ex. A at 7. Accordingly, this factor also weighs strongly in favor of approval.

### 3. *The Proposed Method of Distributing Relief to the Class Is Effective*

The Settlement calls for mailing direct check payments to each member of the Settlement Class, with no need for a potentially cumbersome claims process. *See* ECF No.

20

275-1 § 8.2.3; ECF No. 272-2 § 3(b); Pavlik Decl., Ex. A at 2, 4. This is a highly effective method for distributing relief to the Settlement Class, weighing in favor of approval. *See Thompson v. Seagle Pizza, Inc.*, 2022 WL 1431084, at *9 (W.D. Ky. May 5, 2022) (finding that "mail[ing] a check directly to each participating class member" is an "effective" method of distributing relief).

The administration of the notice program also supports that the mailing of checks to Class Members will effectively distribute the monetary relief of the Settlement. On or before September 29, 2025, the Settlement Administrator mailed the Class Notice to 1,226 persons identified as Class Members. Pavlik Decl. ¶ 7; Specht Decl. ¶ 19. To date, none of the Class Notices have been returned as undeliverable. Pavlik Decl. ¶ 8; Specht Decl. ¶ 19. The success of the mailed notice program further confirms that the mailing of checks will be an effect method for distributing relief to the Settlement Class.

Moreover, the Independent Fiduciary, Fiduciary Counselors, has reviewed the Plan of Allocation, including the provisions to distribute funds via check to Class Members, and has found the Plan of Allocation to be reasonable. Specht Decl., Ex. A at 5-6. Thus, this factor also weighs in favor of final approval.

### 4. *The Terms of the Proposed Award for Attorneys' Fees Present No Obstacle to Approval*

On October 7, 2025, Plaintiff filed a motion seeking attorneys' fees to Class Counsel in the amount of $100,00. ECF No. 279. The requested fee award is consistent with and even lower than those commonly awarded in the Eighth Circuit. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005)

("[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions."); *see also Krueger*, 2015 WL 4246879, at *2 (collecting cases and noting that "courts have consistently awarded one-third contingent fees"). The requested fee also comports with the fee percentages awarded in other actions alleging ERISA violations in connection with transactions involving employee stock ownership plans. *See, e.g., Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *2, 6, 12-15 (E.D. Pa. Aug. 31, 2018) (awarding requested fee equal to 20% of the cash settlement payment); *Hurtado v. Rainbow Disposal Co.*, 2021 WL 2327858, at *1, 7-8 (C.D. Cal. May 21, 2021) (awarding 30% of settlement fund); *In re United States Sugar, Corp. Litig.*, 2010 WL 11505541, at *1, 4-6 (S.D. Fla. Jan. 8, 2010) (awarding 30% of the settlement amount).

Moreover, Fiduciary Counselors confirmed that "[i]n our experience, the percentage requested and the lodestar multiplier are well within the range of attorney fee awards for similar ERISA cases[]…." Specht Decl., Ex. A at 6. Fiduciary Counselors further explained that "[i]n light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable." *Id.* Accordingly, this factor supports final approval.

### D.    The Proposed Settlement Treats Class Members Equitably

Per the Plan of Allocation, Class Members will receive a *pro rata* share of the Net Settlement Amount that is proportional to the total number of vested shares of TPI stock allocated to each individual Class Member. ECF No. 272-2 § 2. Courts typically find

22

allocation methods reasonable when the proceeds are "distributed among class members in proportion to their calculated losses." *See Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009); *see also Fritton v. Taylor Corp.,* 2024 WL 3717351, at *3 (D. Minn. Aug. 8, 2024) (citing *Zilhaver*, 646 F. Supp. 2d at 1080). The allocation method certainly falls within the range of what is needed to establish that Class Members are treated equitably.

The requested service award to the sole class representative in the amount of $2,500, *see* ECF No. 279, which represents only 0.5% of the total recovery, does not alter this conclusion. Public policy strongly supports incentive awards as recognition for the important service that a plaintiff undertakes by participating in a suit and promoting a class action settlement. Such awards compensate a plaintiff for their efforts, the risks they have assumed, and the benefit they have conveyed on the rest of the class. *See Tussey*, 850 F.3d at 962; *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Independent Fiduciary that reviewed the proposed Settlement, Fiduciary Counselors, found that the requested $2,500 service award to Plaintiff Jessica Kloss is reasonable, considering that she has been involved in this litigation since its inception more than two-and-a-half years ago. Specht Decl., Ex. A at 6. Fiduciary Counselors further found the Plan of Allocation to be reasonable, including the *pro rata* distribution of funds and the application of the *de minimis* threshold. *Id.*, Ex. A at 5-6. In short, Fiduciary Counselors concluded that "[t]he provisions [of the Plan of Allocation] are cost-effective and fair to

Class Members in terms of both calculation and distribution." *Id.*, Ex. A at 6. Thus, this factor also weighs in favor of final approval.

> ### E.     The Remaining *Van Horn* Factors Support Final Approval

The remaining factors analyzed by courts in this district—"the defendant's financial condition" and "the amount of opposition to the settlement"—also support final approval of the proposed Settlement. *See Van Horn*, 840 F.2d at 607. While it is possible that Defendants have the financial ability to pay a judgment entered against them in this action, the fact that a defendant could "pay more than it is paying in this settlement … standing alone, does not render the settlement inadequate." *Petrovic*, 200 F.3d at 1152.

Second, there are no known objections to the proposed Settlement. On or before September 29, 2025, the Class Notice was mailed to 1,226 persons identified as Class Members. Pavlik Decl. ¶ 7; Specht Decl. ¶ 19. To date, no Class Members have objected to the Settlement. Pavlik Decl. ¶ 13; Specht Decl. ¶ 19.  Thus, the remaining *Van Horn* factors weigh in favor of final approval.

## IX.   THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES

The Court preliminarily certified the Class for settlement purposes when it granted preliminary approval and approved the issuance of the Class Notice. ECF No. 277 at ¶¶ 5-6, 10. For the reasons contained in Plaintiff's brief in support of preliminary approval (ECF No. 271 at 22-25), which have not changed, the Settlement Class meets all the requirements of Rule 23(a) and 23(b)(1).

Specifically, the Settlement Class is sufficiently numerous because it encompasses hundreds of Class Members; the Settlement Administrator sent the Class Notice to 1,226 individuals. Pavlik Decl. ¶ 7; Specht Decl. ¶ 19. It satisfies commonality because the alleged violations of ERISA—related to the 2018 Citizens Loan and the 2020 Transaction—are the same as to all Class Members. The Settlement Class satisfies typicality and adequacy because Plaintiff's claims arise from the same facts as other Class Members, and she has no conflict with the Settlement Class. The requirements of Rule 23(b)(1) are met because prosecuting separate actions would create a risk of inconsistent adjudications, while an individual adjudication would apply to the Plan as a whole.

## X.     CONCLUSION

The proposed Settlement meets the standard for final approval. Accordingly, Plaintiff respectfully requests that the Court issue an Order certifying the Settlement Class for settlement purposes and granting final approval of the Settlement.

Dated: October 24, 2025

**NICHOLS KASTER, PLLP**

<u>s/Brock J. Specht</u>
Brock J. Specht, MN 0388343
Elizabeth M. Binczik, MN 0398233
80 South 8th St., Suite 4700
Minneapolis, MN 55402
Tel: (612) 256-3200
Fax: (612) 338-4878
bspecht@nka.com
ebinczik@nka.com

**FEINBERG, JACKSON,
WORTHMAN & WASOW LLP**

Daniel Feinberg, *pro hac vice*
Todd Jackson, *pro hac vice*
2030 Addison St., Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
dan@feinbergjackson.com
todd@feinbergjackson.com

Mary Bortscheller, MN 0399634
2112 Broadway Street NE, Suite 225,
#137 Minneapolis, MN 55413
Tel: (510) 606-5219
mary@feinbergjackson.com

*Attorneys for Plaintiff Jessica Kloss*